IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling

**TERRY L. ADAMS,**

        Petitioner,

v.                                **CIVIL ACTION NO. 5:24-CV-51**
                                                Judge Bailey

**R. BROWN,** Warden**,**

        Respondent.

## **REPORT AND RECOMMENDATION**

### **I.    INTRODUCTION**

On March 14, 2024, the *pro se* petitioner, Terry L. Adams ("petitioner") filed a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241. [Doc. 1]. Petitioner is a federal inmate housed at FCI Gilmer in Glenville, West Virginia, and is challenging the revocation of First Step Act time credits resulting from a disciplinary sanction. On June 17, 2024, respondent filed a Motion to Dismiss. [Doc. 16]. On July 1, 2024, petitioner filed a response to the Motion. [Doc. 19]. On July 15, 2024, respondent filed a reply. This matter is assigned to the Honorable John Preston Bailey, United States District Judge, and is referred to the undersigned United States Magistrate Judge to make proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, the undersigned recommends that the motion to dismiss be granted and this case be dismissed without prejudice.

## II. BACKGROUND

### A.   § 2241 Petition

On August 14, 2024, petitioner filed the instant petition.  In the petition, petitioner raises a single ground: he alleges the BOP has unlawfully deprived him of "earned FSA Days against BOP Policy."  [Doc. 1 at 5].  In an attached memorandum in support, petitioner claims BOP Policy does not allow for the BOP to take away earned First Step Act ("FSA") credits as a part of disciplinary sanctions.  [Doc. 1-1 at 1].  Petitioner claims that he recently "received a conduct report" and was moved to secured housing.  [Id. at 2].  He claims that he was placed on e-mail, phone, and commissary restrictions, and lost 54 days of good conduct time credits.  [Id.].  After being released from secured housing, he claims that his eligibility date for supervised release was moved "18 months later than it was prior."  [Id.].  Petitioner claims he never received a Disciplinary Hearing Officer ("DHO") report informing him of any loss of FSA credits, and he thus claims that he was deprived of FSA credits without due process.  [Id.].  Finally, petitioner alleges he was unable to pursue administrative remedies because BOP officers did not have copies of the grievance forms and counselors failed to respond to email requests.  [Id. at 3].  For relief, petitioner asks the Court "Replace the Eligibility Date for Petitioners (sic) Release by Ordering His FSA Days Returned that were taken Against BOP Policy."  [Doc. 1 at 8].

### B.   Motion to Dismiss

On June 17, 2024, respondent filed a Motion to Dismiss and memorandum in support.  In the memorandum in support, respondent argues, first, that petitioner's claims are not ripe because he has not yet earned FSA time credits equal to the remainder of petitioner's term of imprisonment.  [Doc. 17 at 6–10].  Second, respondent claims that petitioner has already "Received the Requested Relief."  [Id. at 10].  Respondent argues

that the case is moot because petitioner is already entitled to apply 365 days FSA credit, the maximum allowable, toward early release from custody. [Id. at 11]. Respondent further states that petitioner has not had any FSA credits revoked for disciplinary reasons and that, even if he had, because he has already earned in excess of the maximum allowable toward early release, such revocation would only go towards placement at a Residential Reentry Center ("RRC") or Home Confinement. [Id.].

**C.    Petitioner's Response**

In his response to the Motion, petitioner clarifies that his "Home Detention Eligibility Date," rather than his date to be released to supervised release, is what he is alleging has been arbitrarily changed. [Doc. 19 at 1]. Petitioner contends that his argument is <u>not</u> to alter his FSA release date but that the BOP violated its own policies and violated his right to due process when his eligibility date was changed for Home Confinement or an RRC. [Id. at 3]. Petitioner cites to respondent's included exhibit showing petitioner's "Inmate Data" sheet and argues that it should show a date for prerelease custody 945 days earlier than his release date. [Id. at 5]. Finally, it appears that petitioner is in agreement with respondent regarding the calculation of his "release date," which the parties agree is April 3, 2027.[1]

**D.    Respondent's Reply**

In reply, respondent reiterates his argument that petitioner has already received the requested relief because he is already receiving the maximum applicable 365 days toward early release from custody. [Doc. 21 at 5].

---

[1] The Court notes that this is also the date shown for petitioner on the BOP website's Inmate Locator: https://www.bop.gov/inmateloc/.

### III. LEGAL STANDARDS

**A.      Motion to Dismiss for Lack of Subject Matter Jurisdiction**

A party may move to dismiss an action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  The burden of proving subject matter jurisdiction on a Rule 12(b)(1) motion to dismiss is on the party asserting federal jurisdiction.  A trial court may consider evidence by affidavit, deposition, or live testimony without converting the proceeding to one for summary judgment.  **Adams v. Bain**, 697 F.2d 1213, 1219 (4th Cir. 1982); **Mims v. Kemp**, 516 F.2d 21 (4th Cir. 1975).  Because the court's very power to hear the case is at issue in a Rule 12(b)(1) motion, the trial court is free to weigh the evidence to determine the existence of its jurisdiction.  No presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.  See **Materson v. Stokes**, 166 F.R.D. 368, 371 (E.D. Va. 1996).  Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.  See Fed. R. Civ. P. 12(h)(3).

**B.      Motion to Dismiss for Failure to State a Claim**

A complaint must be dismissed if it does not allege "'enough facts to state a claim to relief that is plausible on its face.'  **Bell Atl. Corp. v. Twombly**, 550 U.S. 554, 570 (2007) (emphasis added)."  **Giarratano v. Johnson**, 521 F.3d 298, 302 (4th Cir. 2008).  When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiffs, and must view the allegations in a light most favorable to the plaintiffs.  **Edwards v. City of Goldsboro**, 178 F.3d 231, 243–44 (4th Cir. 1999).

4

When rendering its decision, the Court should consider only the allegations contained in the Complaint, the exhibits to the Complaint, matters of public record, and other similar materials that are subject to judicial notice. **Anheuser-Busch, Inc. v. Schmoke**, 63 F.3d 1305, 1312 (4th Cir. 1995). In **Twombly**, the Supreme Court, noting that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," Id. at 555, upheld the dismissal of a complaint where the plaintiffs did not "nudge[ ] their claims across the line from conceivable to plausible." *Id*. at 570.

This Court is well aware that "[m]atters outside of the pleadings are generally not considered in ruling on a Rule 12 Motion." **Williams v. Branker**, 462 F. App'x 348, 352 (4th Cir. 2012). "Ordinarily, a court may not consider any documents that are outside of the Complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." **Witthohn v. Fed. Ins. Co.**, 164 F. App'x 395, 396 (4th Cir. 2006). However, the Court may rely on extrinsic evidence if the documents are central to a plaintiff's claim or are sufficiently referred to in the Complaint. *Id*. at 396–97.

Finally, this Court notes that pro se allegations are held to a less stringent standard than those drafted by lawyers and must be liberally construed. **Haines v. Kerner**, 404 U.S. 519, 520 (1972); **Hudspeth v. Figgins**, 584 F.2d 1345, 1347 (4th Cir. 1978).

## IV. ANALYSIS

At the outset, the undersigned notes that in the course of briefing, petitioner's claim appears to have subtly turned away from cognizable habeas grounds. At the "heart of habeas corpus" petitions, the petitioner is challenging "the fact or duration of his physical confinement," or "seeking immediate release or a speedier release from active confinement." **Preiser v. Rodriguez**, 411 U.S. 475, 498 (1973). The petition, as initially

filed, challenged just that: petitioner alleged a change to the eligibility date for **release**. *See* [Doc. 1 at 8]. Petitioner alleged that "his eligibility date for **supervised release**" was moved to 18 months later. [Doc. 1-1 at 2] (emphasis added). Release to supervised release represents the end of a prisoner's sentence, and challenges affecting the date of that release are undoubtedly challenges to the duration of the prisoner's physical confinement.

After briefing, though, it appears that the parties are in agreement that petitioner has not been deprived of any time toward his release to supervised release, but instead petitioner alleges a change to his eligible date for home confinement. In his response to the Motion, petitioner now alleges that his "Home Detention Eligibility Date" was previously September 1, 2025, but is now listed as October 2, 2026. [Doc. 19 at 1]. Petitioner clarifies that his claim is not to "alter my FSA Release date now" but instead that "my claim is my eligibility date **for Home Confinement/RRC** just simply for no cause changed." [Id. at 3]. (emphasis added).

The distinction between a date to be released to supervised release and a date to be eligible to home confinement may seem pedantic. Unfortunately for petitioner, the distinction is an important one in the context of a habeas petition.

With respect to home confinement, the FSA amended 18 U.S.C. § 3624(c)(2) to provide:

> Home confinement authority. – The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months. The Bureau of Prisons shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph.

18 U.S.C. § 3624(c)(2); First Step Act of 2018, § 602, 132 Stat. at 5238.

However, it is well established that an inmate has no constitutional right to be confined to a particular institution, **Meachum v. Fano**, 427 U.S. 215, 223 (1976), nor any "justifiable expectation" that he will be confined in a particular prison. **Olim v. Waukinekona**, 461 U.S. 238 (1983).

18 U.S.C. § 3621(b) gives the BOP authority to designate the place of a prisoner's imprisonment, and "a designation of a place of imprisonment under this subsection is not reviewable by any court." See also **McKune v. Lile**, 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."). This Court and others have thus found that determinations of whether to release a prisoner to an RRC or home confinement are not reviewable. **Winegar v. Adams**, No. 1:20-CV-246, 2021 WL 5629920, at *6 (N.D. W. Va. Nov. 3, 2021) (Mazzone, M.J.), *report and recommendation adopted*, No. 1:20-CV-246, 2021 WL 5629480 (N.D. W.Va. Nov. 30, 2021) ("with respect to halfway house placement or home confinement, the petitioner is requesting that this Court order the BOP to place her in an RRC for twelve months or, in the alternative, place her on home confinement. This Court does not have the authority to do so."); **Crum v. Young**, No. 5:20-CV-00658, 2021 WL 2843835, at *6 (S.D. W.Va. Jan. 27, 2021) (Eifert, M.J.), *report and recommendation adopted* **Crum v. Young**, No. 5:20-CV-00658, 2021 WL 2434358 (S.D. W.Va. June 15, 2021) ("while the First Step Act provides criteria for the BOP to consider when designating an inmate to a place of imprisonment, it also states unequivocally that the BOP's designation is not subject to judicial review."); **United States v. Smith**, No. 6:15-CR-00006-001, 2019 WL 4016211, at *2 (W.D. Va. Aug. 26, 2019) (Moon, J.) ("While the Second Chance Act and the First Step Act expand the BOP's authority to place prisoners, they do not vest placement authority in this Court.") (citations omitted); **United States v. Lowe**, No.

1:15CR11-1, 2019 WL 3858603, at *2 (M.D. N.C. Aug. 16, 2019) (Tilley, J.) ("under the First Step Act, Lowe does not have a <u>right</u> to be placed on home confinement or in a residential re-entry center; instead, the BOP has the discretion to determine if those options are appropriate for Lowe."); **Richardson v. Warden, Bennettsville FCI**, No. CV 4:21-3230-JD-TER, 2021 WL 8323632, at *2 (D. S.C. Nov. 10, 2021) (Rogers, M.J.), *report and recommendation adopted as modified*, No. 4:21-CV-03230-JD-TER, 2022 WL 1184038 (D. S.C. Apr. 21, 2022) ("To the extent Petitioner is requesting relief of placement in home confinement under the First Step Act, the statute vests the authority to place Petitioner in home confinement with the BOP, not the courts.") (citations omitted). Thus, insofar as petitioner now seeks relief in the form of ordering the BOP to release petitioner to home confinement or to an RRC, or to alter the date on which they list him as eligible to be designated to either, this Court lacks the authority to issue such an order.

Regarding credits to be applied towards release to supervised release, the undersigned finds that petitioner's claims are moot. Under 18 U.S.C. § 3632(d)(4)(A), "A prisoner, except for an ineligible prisoner under subparagraph (D), who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits" at a rate of "10 days time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities" with the possibility to earn an additional 5 days per 30 days of successful participation. 18 U.S.C. § 3632(d)(4)(A). Time credits earned are applied toward time in prerelease custody or supervised release. 18 U.S.C. § 3632(d)(4)(C). In the case of supervised release,

> **(3) Supervised release.**--If the sentencing court included as a part of the prisoner's sentence a requirement that the prisoner be placed on a term of supervised release after imprisonment pursuant to section 3583, the

> Director of the Bureau of Prisons may transfer the prisoner to begin any such term of supervised release at an earlier date, not to exceed 12 months, based on the application of time credits under section 3632.

18 U.S.C. § 3624.

Here, petitioner does not dispute respondent's claim that the BOP has determined he is entitled to earn and apply 365 days toward early release to supervised release. *See* [Doc. 17 at 11]. Petitioner makes clear in his response to the Motion that he is not challenging the date of his release. [Doc. 19 at 3]. The FSA Time Credit Assessment attached to respondent's memorandum in support of the Motion to Dismiss shows that petitioner is receiving the maximum of 365 days credit toward release to supervised release. [Doc. 17-1 at 2]. Therefore, insofar as the petition states a claim relating to FSA credits applied toward release, petitioner has already received the maximum possible credit.

Article III of the United States Constitution limits the jurisdiction of the federal courts to cases or controversies. Therefore, a case becomes moot when there is no viable legal issue left to resolve. *See* **Powell v. McCormick**, 395 U.S. 486, 496 (1969). If developments occur during the course of a case which render the Court unable to grant a party the relief requested, the case must be dismissed as moot. **Blanciak v. Allegheny Ludlum Co.**, 77 F.3d 690, 698–699 (3d Cir. 1996). "The writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody." **Braden v. 30th Jud. Cir. Ct. of Kentucky**, 410 U.S. 484, 494–95 (1973). Here, it appears there is no viable legal issue left to resolve and the Court should dismiss the petition.

9

## VI. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Motion to Dismiss [**Doc. 16**] be **GRANTED** and that the petition [**Doc. 1**] be **DENIED** and **DISMISSED WITHOUT PREJUDICE**.

The petitioner shall have **fourteen (14) days** from the date of service of this Report and Recommendation within which to file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** 28 U.S.C. §636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

The Clerk of the Court is further directed to mail a copy of this Report and Recommendation to the petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet.

**DATED**:  July 19, 2024.

*/s. James P. Mazzone*
JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE

11